ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2025-Jun-10 17:03:03
60CV-25-6035
C06D14 : 17 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## LAW DIVISION

| | | |
|---|---|---|
| COMMONSPIRIT HEALTH d/b/a CHI ST. VINCENT | ) ) ) | |
| Plaintiff, | ) ) | Case No. XXXXX |
| v. | ) ) ) | |
| ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A BLUE CROSS AND BLUE SHIELD OF VIRGINIA; and DOES 1 THROUGH 25, INCLUSIVE, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## PLAINTIFF COMMONSPIRIT HEALTH d/b/a CHI ST. VINCENT'S COMPLAINT AT LAW

1.     Plaintiff, COMMONSPIRIT HEALTH d/b/a CHI ST. VINCENT (hereinafter "ST. VINCENT"), by and through its attorneys, LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, for its Complaint at Law ("Complaint") against ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A BLUE CROSS AND BLUE SHIELD OF VIRGINIA, (hereinafter "BCBSVA"), and DOES 1 THROUGH 25, INCLUSIVE, upon personal information as to their own activities and upon information and belief as to the activities of others and all other matters, and states as follows:

## INTRODUCTION

2.     This is an action against BCBSVA for breach of implied-in-fact contract and *quantum meruit* arising from a business relationship between ST. VINCENT and BCBSVA. By this action, ST. VINCENT seeks compensatory damages, interest, and costs.

## PARTIES

3.     Plaintiff ST. VINCENT is a not-for-profit public benefit corporation organized and existing pursuant to the laws of the State of Arkansas. ST. VINCENT, through its regional health network, COMMONSPIRIT HEALTH and its subsidiaries, including but not limited to ST. VINCENT INFIRMARY MEDICAL CENTER, has its principal place of operation in the City of Little Rock, County of Pulaski, Arkansas. ST. VINCENT provided medical care to Patients (as such term is defined herein), who were BCBSVA beneficiaries when such medical care was provided.

4.     BCBSVA is a domestic insurance company, incorporated in the state of Virginia with its principal office located at 2015 Staples Mill Road, Richmond, Virginia with a registered agent at 4701 Cox Road Suite 285, Glen Allen, Virginia.

5.     ST. VINCENT is unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants DOES 1 through 25, inclusive, and therefore sues such defendants by such fictitious names. ST. VINCENT will seek leave of the Court to amend this Complaint to allege its true names and capacities when ascertained.

6. .     BCBSVA and Does 1 through 25, inclusive, shall be collectively referred to as "BCBSVA" or "Defendants."

7.     Defendants, each of them, at all relevant times, have transacted business in the State of Arkansas. The violations alleged within this Complaint have been and are being carried out in the State of Arkansas.

8.     ST. VINCENT is informed, believes and thereon alleges that at all relevant times each of the Defendants, including the defendants named "Doe," was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary and/or partner of one or more of the

other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other defendants.

## JURISDICTION AND VENUE

9.    Jurisdiction over this matter exists under Ark. Code Ann. § 16-4-101(B) because ST. VINCENT, through its regional health network, CHI St. Vincent, is a resident of the State of Arkansas and because BCBSVA transacts business in Arkansas, and because BCBSVA's making and performance of the transactions, and the implied-in-fact contracts at issue are substantially connected with the State of Arkansas.

10.    Venue is proper in the Circuit Court of Pulaski County pursuant to Ark. Code Ann. § 16-60-101 because it is the county in which the transactions occur out of which the cause of action arises.

## FACTUAL BACKGROUND

11.    ST. VINCENT, between the dates of June 9, 2019 and August 11, 2021 provided medically necessary treatment to the individuals identified on the spreadsheet attached as Exhibit A[1] to this Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patients") totaling three (3) claims. On the dates of service set forth in Ex. A ("the Dates of Service"), ST. VINCENT rendered medically necessary services, supplies and/or equipment to Patients until Patients became stable for discharge from ST. VINCENT.

---

[1] ST. VINCENT has limited disclosure of patient identification here pursuant to the privacy provisions of the Health Insurance Portability & Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320 *et seq.* A more detailed Exhibit can be provided upon entry of a Court ordered, HIPAA compliant protective order.

12.    ST. VINCENT is informed and believes and thereon alleges that at all relevant times Patients were enrollees and/or beneficiaries of health plans sponsored, financed, administered, and/or funded by BCBSVA.

13.    ST. VINCENT is informed, believes and thereon alleges BCBSVA is financially responsible for the medically necessary services, supplies, and/or equipment (including, but not limited to, emergency care) rendered to the Patients on the Dates of Service.

14.    Prior to and during the dates of service set forth in Ex. A, ST. VINCENT sought authorization for treatment from BCBSVA. BCBSVA gave authorization reference numbers, represented that authorization was pending, and/or requested supporting clinical medical records which ST. VINCENT provided.

15.    Insurance companies like BCBSVA receive millions of dollars in premiums collected from their clients and insureds in exchange for the promise of making benefit payments to healthcare providers for emergency and other medical services rendered to their members.

16.    BCBSVA received premium payments for Patients' enrollment and coverage in BCBSVA's respective health plans.

17.    BCBSVA accepted the services ST. VINCENT provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

18.    ST. VINCENT's usual and customary charges for the medically necessary services, supplies and/or equipment rendered to Patients amounted to $1,130,504.16.

19.    ST. VINCENT timely and properly submitted the bills containing said charges for the medically necessary services, supplies, and/or equipment rendered to Patients to BCBSVA for payment.

20.      Rather than properly and fully pay ST. VINCENT for the medically necessary services, supplies, and/or equipment ST. VINCENT rendered to the Patients, BCBSVA underpaid, issuing payments of $437,151.95. To date, BCBSVA owes ST. VINCENT no less than $108,420.12. Ex. A.

21.      BCBSVA failed to pay fully and properly ST. VINCENT for the medically necessary services, supplies, and/or equipment rendered to Patients, despite demands thereof.

22.      BCBSVA has refused, despite ST. VINCENT's repeated demands, to fully and properly pay ST. VINCENT the reasonable and customary value of the medical care rendered to BCBSVA's beneficiaries as specified in Ex. A. BCBSVA has unjustly benefitted by not paying fully ST. VINCENT for the reasonable value of such services.

23.      BCBSVA unjustly benefitted by not paying fully ST. VINCENT for the reasonable value of such services. BCBSVA promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such premiums and then refused despite demands to fully and properly pay ST. VINCENT the reasonable and customary value of the medical care rendered to BCBSVA's beneficiaries as specified in Ex. A. BCBSVA accepted the services ST. VINCENT provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

24.      BCBSVA further unjustly and directly benefitted when it caused ST. VINCENT to treat its beneficiaries, Patients, thus improving BCBSVA's patient-population risk pool as Patient was now healthier and less of a cost exposure risk to BCBSVA's insurance funds and allowing BCBSVA's profits to continue with further guarantee that a healthier and still living Patient would

ensure that the BCBSVA would be allowed to collect future premiums for Patients' enrollment in BCBSVA's health plan.

25.    BCBSVA further unjustly and directly benefited when it caused ST. VINCENT to treat its beneficiaries, Patients, in the following ways:

a) Improved Health Outcomes – BCBSVA has a vested interest in keeping their enrollees, like Patients, healthy, as healthier individuals require less medical care and incur fewer costs. By encouraging their enrollees, like Patients, to seek medical care when needed, including hospitalization, when necessary, BCBSVA helped prevent Patients' illness from becoming more serious and costly for BCBSVA.

b) Better Customer satisfaction – when Patients received quality care at ST. VINCENT, Patients were more satisfied with their health insurance coverage which led to increased loyalty and retention rates for BCBSVA.

c) Increased Market Share – by offering competitive coverage that includes access to high-quality hospitals, like ST. VINCENT, BCBSVA was able to attract new customers and retain existing ones. This helped them gain a larger share of the market which led to increased profits and better bargaining power with healthcare providers.

d) Cost Savings – with an improved health outcome of Patients, BCBSVA saved money by avoiding further future costly treatments and is therefore able to keep premiums lower for their customers, further increasing BCBSVA's attractiveness and competitiveness in expanding its patient-pool.

26.    As a direct and proximate result of BCBSVA's wrongful conduct, ST. VINCENT has suffered damages in an amount to be proven at trial but not less than the sum of $108,420.12 exclusive of interest.

## COUNT I – BREACH OF IMPLIED-IN-FACT CONTRACT
### (Against Defendant BCBSVA and DOES 1 through 25, inclusive)

27.    ST. VINCENT incorporates by reference and re-alleges paragraphs 1-26 of this Complaint here as though set forth in full.

28.    ST. VINCENT and USAble Corporation (d/b/a Arkansas Blue Cross Blue Shield) ("ABCBS") – a non-party to this action have a written contract and that contract informs and guides ST VINCENT'S relationships with other entities including out-of-state Blueu Cross insurers, e.g. Defendant (the "Contract"). Among other things, the Contract obligated ST. VINCENT to medically treat individuals who were certain beneficiaries of non-ABCBS health plans. Specifically, the Contract obligated ST. VINCENT to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the national Blue Cross Blue Shield Association, of which BCBSVA is one such member.

29.    Although BCBSVA was not a signatory to or obligee of the Contract, the Contract nonetheless bound ST. VINCENT to treat BCBSVA's beneficiaries. The Contract also obligated ST. VINCENT to accept as payment in full monies received from Blue Cross Blue Shield Association member companies (such as BCBSVA) that were made at the discounted rates found within the Contract.

30.    At all relevant times, the Contract between ST. VINCENT and ABCBS bound ST. VINCENT to treat beneficiaries not only of health plans financed, sponsored, and/or administered by ABCBS, but also for beneficiaries of health plans financed, sponsored, and/or administered by member companies of the national Blue Cross Blue Shield Association. One such member company of said association is BCBSVA. Thus, even though BCBSVA never signed the Contract nor is obligated under the Contract, ST. VINCENT must nevertheless medically treat BCBSVA

members and accept payment, in full, from such member companies, with the payment received conforming to the rates found within the Contract.

31.    All BCBSVA needed do to take advantage of such medical treatment and discounted rates on behalf of its members/beneficiaries was to issue a "Blue Card" program identification card. The members/beneficiaries could then present their "Blue Card" program identification card to ST. VINCENT at admission, which signaled to ST. VINCENT that it must medically treat such patient pursuant to the terms of the Contract and must accept payments at the discounted rates found in the Contract even though BCBSVA was not a signatory to the Contract. Otherwise, ST. VINCENT would be in violation of its contractual duties.

32.    In this way — by conduct alone and with no express agreement between them — an implied-in-fact contract arose between ST. VINCENT and BCBSVA each time one of the Patients presented to ST. VINCENT their BCBS-issued "Blue Card" program identification card and/or otherwise identified themself as being a member/beneficiary of a health plan financed, sponsored, and/or administered by a member company of the national Blue Cross Blue Shield Association.

33.    Each of the Patients specified in Exhibit A presented a "Blue Card" program identification card issued by BCBSVA and/or otherwise identified themself as belonging to a health plan financed, sponsored, and/or administered by BCBSVA at the time of their hospital stay at ST. VINCENT on the Dates of Service.

34.    Accordingly, each time one of the Patients sought medical treatment at ST. VINCENT and so identified themself, an implied-in-fact contract arose in which ST. VINCENT agreed to render to that Patient all medically necessary services, supplies, and/or equipment needed by that individual and secondarily agreed to accept as payment, in full, monies received from

BCBSVA that were in conformance to the discounted rates found in the Contract. In return, BCBSVA agreed to pay for such care, albeit at the appropriate discounted rate regarding such care.

35.    ST. VINCENT's usual and customary charges for rendering the medically necessary services, supplies, and/or equipment to the Patients set forth in Exhibit A, amounted to $1,130,504.16. At the rates found within the Contract, BCBSVA should have paid an aggregate amount of $545,572.07. However, BCBSVA only paid $437,151.95, leaving a deficit of $108,420.12 which amounted to a breach of its implied-in-fact contracts with ST. VINCENT.

36.    No express written contract between BCBSVA and ST. VINCENT existed to prescribe payment for the medically necessary services, supplies, and/or equipment rendered to Patients and ST. VINCENT did not perform those services gratuitously. Rather, BCBSVA knew and understood that ST. VINCENT rendered such treatment with the expectation of being paid the discounted rates under the Contract and through the Blue Card program.

37.    Prior to the treatment rendered by ST. VINCENT, through industry custom and practice, BCBSVA impliedly agreed, promissorily impliedly expressed and understood that ST. VINCENT would render medically necessary care to BCBSVA beneficiaries, submit bills for such care to BCBSVA, and that BCBSVA would pay the discounted rates under the Contract to ST. VINCENT for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

38.    Specifically, prior to the dates that ST. VINCENT admitted Patients to its facilities for medical services, ST. VINCENT contacted BCBSVA to verify Patients' healthcare eligibility under a BCBSVA health plan, to obtain authorization from BCBSVA for the medical services rendered and to be rendered, and to establish its right to be paid by BCBSVA the discounted rates under the Contract for such care. In response, BCBSVA represented that Patients were

beneficiaries of one of BCBSVA's health plans, provided the authorization numbers incorporated in Ex A, and approved admissions of the Patients.

39.      At no time did BCBSVA represent that it would not pay the discounted rates under the Contract to ST. VINCENT for the necessary medical treatment rendered to Patients.

40.      Through ST. VINCENT's treating the Patients, ST. VINCENT's initiating contact with BCBSVA as described above, and BCBSVA's instructing the Patients to present their BCBSVA-issued "Blue Card" membership identification to ST. VINCENT, Plaintiff and Defendant entered into an implied-in-fact contract. The Contract was also formed through industry custom and practice, as well as Plaintiff and Defendant's prior and on-going course of conduct *vis-à-vis* the "Blue Card" program. Prior course of conduct included, among other things:

a)  BCBSVA's issuance of identification cards to Patients;

b)  BCBSVA's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c)  ST. VINCENT communicating with BCBSVA to ask for authorizations to render medical care to Patients and BCBSVA issuing authorizations to ST. VINCENT for such care;

d)  BCBSVA communicating to ST. VINCENT the medical eligibility benefits for Patients without advising ST. VINCENT that BCBSVA would not make full payment of the discounted rates under the Contract for the services to be provided to Patients;

e)  BCBSVA sending written approvals to ST. VINCENT for the specified medical services for Patients;

f)  BCBSVA requesting that ST. VINCENT send BCBSVA clinical information and medical records.

41.    In addition, prior course of conduct by BCBSVA included ST. VINCENT submitting claims to BCBSVA and in response, BCBSVA would properly pay the discounted rates under the Contract for those claims. Over the last five (5) years, ST. VINCENT has billed numerous claims and BCBSVA has satisfactorily paid on a number of claims submitted by ST. VINCENT in the near identical manner and method as the facts alleged herein.

42.    BCBSVA directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that ST. VINCENT perform those services on Patients who were beneficiaries of BCBSVA, thus fulfilling BCBSVA's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between BCBSVA and Patients was satisfied and BCBSVA was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by ST. VINCENT. Further, ST. VINCENT directly conferred a benefit upon BCBSVA when it helped BCBSVA make good on promises BCBSVA made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

43.    ST. VINCENT provided medically necessary care to BCBSVA beneficiaries as described above.

44.    ST. VINCENT properly billed BCBSVA for the medically necessary services provided to Patients as listed in Ex. A.

45.    BCBSVA breached the implied-in-fact contract by paying only $437,151.95, resulting in an aggregate underpayment of $108,420.12, per the discounted rates under the Contract, for the medical services performed by ST. VINCENT.

46.    ST. VINCENT performed all conditions required on its part to be performed in accordance with the terms and conditions of the implied-in-fact contract.

47.    BCBSVA breached the implied-in-fact contract by underpaying ST. VINCENT for the medically necessary services, supplies and/or equipment rendered or supplied to Patients.

48.    As a direct and proximate result of BCBSVA's breach of the implied-in-fact contract, ST. VINCENT suffered damages in an amount to be proven at trial but not less than the sum of $108,420.12, exclusive of interest.

49.    WHEREFORE, ST. VINCENT prays this Court enter judgment in its favor and against BCBSVA as follows:

a)    For the principal sum of $108,420.12;

b)    For interest on such principal sum pursuant *to* Ark. Code Ann. § 4-57-101(d) (eff. Aug. 2013); *Mo. & N. Ark. R.R. v. Entergy Ark., Inc.,* 2013 U.S. Dist. LEXIS 139204 (E.D. Ark. Sept. 27, 2013*)* and;

c)    For such other and further relief as the Court deems just and proper.

## COUNT II – QUANTUM MERUIT (IN THE ALTERNATIVE)
(Against Defendant BCBSVA and DOES 1 through 25, inclusive)

50.    ST. VINCENT incorporates by reference and re-alleges paragraphs 1-26 of this Complaint here as though set forth in full.

51.    On the dates of service set forth in Ex. A, ST. VINCENT provided emergency and/or medically necessary care to Patients.

52.    In the alternative, assuming *arguendo* that it is determined that no express or implied-in-fact contract between BCBSVA and ST. VINCENT existed, and/or that such a contract cannot be enforced as to the payment for the medically necessary services, supplies and/or

equipment rendered to Patients, Plaintiff should nevertheless be fully paid under the common law doctrine of *quantum meruit*.

53.     ST. VINCENT did not perform these services gratuitously. Rather, BCBSVA, by its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, knew and understood that ST. VINCENT rendered such treatment with the expectation of being paid.

54.     Prior to the treatment rendered by ST. VINCENT to Patients, through industry custom and practice, BCBSVA impliedly agreed and understood that ST. VINCENT would render medically necessary services to BCBSVA beneficiaries, submit bills for such care to BCBSVA, and that BCBSVA would pay the usual and customary value to ST. VINCENT for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

55.     Specifically, prior to the dates that ST. VINCENT admitted Patients to its facilities for medical services, ST. VINCENT contacted BCBSVA to verify Patients' healthcare eligibility under a BCBSVA health plan, to obtain authorization from BCBSVA for the medical services rendered and to be rendered, and to establish its right to be paid by BCBSVA the usual and customary value for such care. In response, BCBSVA represented that Patients were beneficiaries of one of BCBSVA's health plans, provided authorization numbers incorporated herein, and approved admission of Patients.

56.     At no time did BCBSVA represent that it would not pay the usual and customary value to ST. VINCENT for the necessary medical treatment rendered to Patients and at no time did ST. VINCENT represent that it would perform the services gratuitously.

57.    By treating Patients and initiating contact with BCBSVA as described above, ST. VINCENT provided a benefit to BCBSVA and BCBSVA failed to compensate properly ST. VINCENT for that received benefit, despite the prior and on-going course of conduct between ST. VINCENT and BCBSVA. Prior course of conduct included, among other things:

a) BCBSVA's issuance of identification cards to Patients;

b) BCBSVA's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c) ST. VINCENT communicating with BCBSVA to ask for authorization to render medical care to Patients and BCBSVA issuing authorization to ST. VINCENT for treatment for that care;

d) BCBSVA communicating to ST. VINCENT the medical eligibility benefits for Patients without advising ST. VINCENT that BCBSVA would not make full payment of the usual and customary value of the services to be provided to Patients;

e) BCBSVA sending written approval to ST. VINCENT for the specified medical services for Patients;

f) BCBSVA requesting that ST. VINCENT send BCBSVA clinical information and medical records.

58.    In addition, prior course of conduct by BCBSVA included ST. VINCENT submitting claims to BCBSVA and in response, BCBSVA would properly pay the usual and customary value of those claims. Over the last five (5) years, ST. VINCENT have billed numerous claims and BCBSVA has satisfactorily paid on a number of claims submitted by ST. VINCENT in the near identical manner and method as the facts alleged herein.

59.    In addition, BCBSVA pre-verified Patients' coverage and eligibility and authorized the treatments.

60.    BCBSVA's authorizations for the treatments were implied requests to ST. VINCENT to perform those services on behalf of Patients.

61.    ST. VINCENT rendered such treatments after the implied requests for such services by BCBSVA and ST. VINCENT intended those services to benefit, among others, BCBSVA.

62.    BCBSVA directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that ST. VINCENT perform those services on Patients who were beneficiaries of BCBSVA, thus fulfilling BCBSVA's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between BCBSVA and Patients was satisfied and BCBSVA was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by ST. VINCENT. Further, ST. VINCENT directly conferred a benefit upon BCBSVA when it helped BCBSVA make good on promises BCBSVA made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

63.    ST. VINCENT provided medically necessary care to the BCBSVA beneficiaries as described above.

64.    ST. VINCENT properly billed BCBSVA for the medically necessary services provided to Patients as listed in Ex. A.

65.    ST. VINCENT is informed and believes and alleges thereon that BCBSVA expressly instructed its beneficiaries (including Patients) to seek medical care in an emergency

from the nearest medical provider and for such beneficiaries to tell the emergency medical provider to send BCBSVA the bills for such care for payment by BCBSVA (except for co-payments, deductibles and co-insurance amounts, if any).

66.    After ST. VINCENT rendered the care specified in Ex. A to Patients, ST. VINCENT properly and timely billed BCBSVA for such care.

67.    The reasonable value of the medical care provided was and is the usual and customary charges of those services that is the total billed charges in the bills submitted to BCBSVA by ST. VINCENT for $1,130,504.16. BCBSVA paid only $437,151.95, leaving a deficit of $693,352.21 owed to ST. VINCENT.

68.    Despite demands thereon, BCBSVA has refused to pay fully ST. VINCENT for the medical care rendered to Patients as set forth in Exhibit A.

69.    ST. VINCENT did not perform these services gratuitously, but rather expected to be paid the reasonable and customary value for such services which amounts to $1,130,504.16.

70.    BCBSVA unjustly benefitted by not paying fully ST. VINCENT for the reasonable value of such services. BCBSVA promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such premiums and then refused despite demands to fully and properly pay ST. VINCENT the reasonable and customary value of the medical care rendered to BCBSVA's beneficiaries as specified in Ex. A. BCBSVA accepted the services ST. VINCENT provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

71.    As a direct and proximate result of BCBSVA's misconduct, ST. VINCENT has suffered damages in an amount to be proven at trial but not less than the sum of $693,352.21, exclusive of interest.

72.    WHEREFORE, ST. VINCENT prays this Court enter judgment in its favor and against BCBSVA as follows:

a)  For the principal sum of $693,352.21;

b)  For interest on such principal sum pursuant to Ark. Code Ann. § 4-57-101(d) (eff. Aug. 2013); *Mo. & N. Ark. R.R. v. Entergy Ark., Inc.,* 2013 U.S. Dist. LEXIS 139204 (E.D. Ark. Sept. 27, 2013*)* and;

c)  For such other and further relief as the Court deems just and proper.


Dated:  June 10, 2025

Respectfully submitted,

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.


By:    */s/ Lauren K. Miller*
One of the Attorneys for Plaintiff


Marcus R. Morrow, Esq., AR. Bar No. 2024007
Lauren K. Miller, Esq., AR. Bar No. 2025032
LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
20 N. Clark St., Suite 3300
Chicago, IL 60602
Phone: (312)-626-1870
Fax: (818)-559-5484
mmorrow@sacfirm.com (cc: lbencomo@sacfirm.com)
lmiller@sacfirm.com (cc: sboyd@sacfirm.com)

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. SHAWN JOHNSON - 14TH DIVISION 6TH CIRCUIT

### COMMON SPIRIT HEALTH V ANTHEM HEALTH OF VA

### 60CV-25-6035

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A BLUE CROSS
4701 Cox Rd. Ste. 285
Glen Allen, VA  23060-6808

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Lauren K. Miller
20 North Clark Street
Suite 3300
Chicago, IL  60602

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

Address of Clerks Office

TERRI HOLLINGSWORTH, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

*jvalenzuela*

Jane Valenzuela, DC

Date: 06/13/2025

# EXHIBIT 2

| COMMONSPIRIT HEALTH d/b/a ST. VINCENT V. ANTHEM HEALTH PLANS OF VIRGINIA, INC d/b/a BLUE CROSS BLUE SHIELD OF VIRGINIA | | | | | | |
|---|---|---|---|---|---|---|

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2023-Jun-16  17:03:53
60CV-25-6035

| FC 34812 | | | | | | |
|---|---|---|---|---|---|---|
| No. | Admit Date | Discharge Date | Patient ID | Total Charges | Total Paid | Underpaid Per Implied-In-Fact | Underpaid Per |
| 1 | 6/9/2019 | 7/10/2019 | AGXAN2968800 | $807,302.55 | $300,359.03 | $94,005.79 | $506,943.52 |
| 2 | 6/14/2021 | 6/19/2021 | A9OO76W03306 | $156,739.49 | $86,280.66 | $7,608.82 | $70,458.83 |
| 3 | 8/4/2021 | 8/11/2021 | FZXAN6954468 | $166,462.12 | $50,512.26 | $6,805.51 | $115,949.86 |
| | | | Total | $ 1,130,504.16 | $ 437,151.95 | $ 108,420.12 | $ 693,352.21 |

# EXHIBIT 3

**◼ARCourts** 

# 60CV-25-6035: COMMON SPIRIT HEALTH V ANTHEM HEALTH OF VA

## Case Summary

Case Number
60CV-25-6035

Court
PULASKI CIRCUIT

Status
CASE OPEN

Filing Date
06/10/2025

Case Type
CONTRACT - OTHER

## Case Participants

| Name | Type | Alias |
| --- | --- | --- |
| HON. SHAWN JOHNSON - 14TH DIVISION 6TH CIRCUIT | JUDGE | JOHNSON |
| COMMONSPIRIT HEALTH | PLAINTIFF | None |
| MORROW, MARCUS ROCKWELL | PLAINTIFF/PETITIONER ATTORNEY | None |
| MILLER, LAUREN KATHLEEN | PLAINTIFF/PETITIONER ATTORNEY | None |
| ANTHEM HEALTH PLANS OF VIRGINIA, INC. D/B/A BLUE CROSS | DEFENDANT | None |

## Case Events

### No Events

COMMON S. ...IT HEALTH V ANTHEM HEALTH OF VA JURY TRIAL : ͡CV-25-6035 • Arkansas Judiciary

## Offenses

### No Offenses

## Sentences

### No Sentences

## Milestone Tracks

### No Milestones

COMMON C... ...IT HEALTH V ANTHEM HEALTH OF VA JURY TRIAL : ...CV-25-6035 • Arkansas Judiciary

## Docket Entries

| Filing Date | Description | Docket Detail | Name | Documents |
|---|---|---|---|---|
| 06/10/2025 @ 5:03PM | AOC COVERSHEET CIVIL | Civil Cover Sheet | MORROW, MARCUS ROCKWELL | None |
| 06/10/2025 @ 5:03PM | COMPLAINT/PETITION FILED $ | Complaint | MORROW, MARCUS ROCKWELL | 🖼 WEB |
| 06/10/2025 @ 5:03PM | EXHIBITS | Exhibit A to Complaint | MORROW, MARCUS ROCKWELL | 🖼 WEB |
| 06/10/2025 @ 5:03PM | MOF ORIGINAL | None | MORROW, MARCUS ROCKWELL | None |
| 06/11/2025 @ 7:59AM | PAYMENT RECEIVED | A Payment of $165.00 was made on receipt 60CI550192. | None | None |
| 06/12/2025 @ 4:49PM | SUMMONS ISSUED | Summons | MORROW, MARCUS ROCKWELL | 🖼 WEB |
| 06/12/2025 @ 4:49PM | SUMMONS FEE 21-6-402 $ | Summons | MORROW, MARCUS ROCKWELL | None |
| 06/12/2025 @ 4:49PM | EFILING NOTICE OF APPEARANCE | None | MORROW, MARCUS ROCKWELL | None |
| 06/13/2025 @ 7:50AM | PAYMENT RECEIVED | A Payment of $2.50 was made on receipt 60CI550379. | None | None |

COMMON SPIRIT HEALTH V ANTHEM HEALTH OF VA JURY TRIAL : 60CV-25-6035 • Arkansas Judiciary

| Filing Date | Description | Docket Detail | Name | Documents |
|---|---|---|---|---|
| 06/25/2025 @ 2:36PM | NOTICE - OTHER | Scheduling Notice | None | WEB |