IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

COMMONSPIRIT HEALTH, d/b/a
CHI St. Vincent                                                          PLAINTIFF

v.                              No. 4:25-cv-722-DPM

ANTHEM HEALTH PLANS OF
VIRGINIA, INC., d/b/a Blue Cross
and Blue Shield of Virginia and
DOES, 1–25, Inclusive                                               DEFENDANTS

COMMONSPIRIT HEALTH, d/b/a
CHI St. Vincent                                                          PLAINTIFF

v.                              No. 4:25-cv-723-DPM

BLUE CROSS OF CALIFORNIA;
ANTHEM BLUE CROSS LIFE AND
HEALTH INSURANCE COMPANY;  and
DOES, 1–25                                                          DEFENDANTS

COMMONSPIRIT HEALTH, d/b/a
CHI St. Vincent                                                          PLAINTIFF

v.                              No. 4:25-cv-724-DPM

BLUECROSS BLUE SHIELD OF
TENNESSEE, INC., and DOES, 1–25,
Inclusive                                                           DEFENDANTS

COMMONSPIRIT HEALTH, d/b/a
CHI St. Vincent                                                  PLAINTIFF

v.                              No. 4:25-cv-998-DPM

BLUE CROSS AND BLUE SHIELD OF
ALABAMA and DOES, 1 through 25,
Inclusive                                                       DEFENDANTS

COMMONSPIRIT HEALTH, d/b/a
CHI St. Vincent                                                  PLAINTIFF

v.                              No. 4:25-cv-1049-DPM

LOUISIANA HEALTH SERVICE AND
INDEMNITY COMPANY, d/b/a Blue
Cross and Blue Shield of Louisiana and
DOES, 1–25, Inclusive                                           DEFENDANTS

COMMONSPIRIT HEALTH, d/b/a
CHI St. Vincent                                                  PLAINTIFF

v.                              No. 4:25-cv-1153-DPM

BLUE CROSS BLUE SHEILD
HEALTHCARE PLAN OF GEORGIA,
INC., d/b/a Anthem Blue Cross and Blue
Shield and DOES, 1–25, Inclusive                               DEFENDANTS

## ORDER

This is a dispute between Arkansas hospitals and out-of-state Blue

Cross Blue Shield insurance companies about alleged underpayments

for treating insured patients. The CHI St. Vincent hospitals in Arkansas are part of CommonSpirit Health, a nationwide health system. CommonSpirit has sued six Blue Cross Blue Shield insurance companies operating from six different states: Blue Cross Blue Shield of Virginia, California, Tennessee, Alabama, Louisiana, and Georgia.

CommonSpirit says that it treated out-of-state patients insured by these Blue Cross entities at St. Vincent hospitals. All the Blue Cross entities, and the patients, participated in the "Blue Card" program, by which Blue Cross insureds can get in-network healthcare benefits outside of their home plan's service area. CommonSpirit says it reached out to the Blue Cross entities to get the necessary hospital treatment authorized by insurance. The insurance companies gave authorization reference numbers, represented that authorization was pending, and requested supporting clinical medical records, which the hospital provided. When CommonSpirit submitted the bills to them, the Blue Cross entities underpaid.

CommonSpirit claims that the Blue Cross defendants violated a contract implied-in-fact. Alternatively, it claims unjust enrichment and seeks a quantum meruit recovery. The Blue Cross entities all move to dismiss. The Court takes all facts alleged by CommonSpirit as true and

makes all reasonable inferences in its favor. *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).*

*

There are some preliminary issues. The Court previously consolidated the six pending cases.** In *CommonSpirit IV*, Blue Cross Alabama argues that CommonSpirit lacks standing. It also asserts federal preemption. In *CommonSpirit V*, Blue Cross Louisiana argues that this Court lacks personal jurisdiction.

**Standing?** One among the six defendant Blue Cross entities presses that CommonSpirit is not the real party in interest and thus lacks standing. Fed. R. Civ. P. 17(a). CommonSpirit is not the hospitals that treated the Blue Cross insureds. The briefing clarifies that it's a

---

* No party objected to my staying on these cases, even though my family and I have health insurance with Arkansas Blue Cross Blue Shield. All material things considered, I don't believe there is a basis for reasonably questioning my impartiality, and I will therefore continue presiding over these matters. 28 U.S.C. § 455(a) & (b)(1).

** *CommonSpirit Health v. Anthem Health Plans of Virginia, Inc.*, No. 4:25-cv-722-DPM (*CommonSpirit I*); *CommonSpirit Health v. Blue Cross of California*, No. 4:25-cv-723-DPM (*CommonSpirit II*); *CommonSpirit Health v. BlueCross BlueShield of Tennessee*, No. 4:25-cv-724-DPM (*CommonSpirit III*); *CommonSpirit Health v. Blue Cross and Blue Shield of Alabama*, No. 4:25-cv-998-DPM (*CommonSpirit IV*); *CommonSpirit Health v. Louisiana Health Service and Indemnity Company*, 4:25-cv-1049-DPM (*CommonSpirit V*); and *CommonSpirit Health v. Blue Cross Blue Shield Healthcare Plan of Georgia*, No. 4:25-cv-1153-DPM (*CommonSpirit VI*).

–4–

corporate parent—a nationwide health system with wholly owned subsidiary corporations, such as the St. Vincent entities. CommonSpirit operates these hospitals. Blue Cross Alabama is correct that, in general, a parent can't stand in for a subsidiary in a lawsuit. *Shipp v. Bell & Ross Enterprises, Inc.*, 256 Ark. 89, 97, 505 S.W.2d 509, 515 (1974); *Potthoff v. Morin*, 245 F.3d 710, 716 (8th Cir. 2001). The corporate forms must be honored. But given the apparently undisputed corporate family involved here, and how it operates, the Court confronts a technical foul without substantive effect. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It does here. The Court grants leave to clean up the complaints, in due course, by clarifying the corporate relationships and adding the St. Vincent entities as plaintiffs. The amended complaints will be due after the status conference the Court plans to hold in May.

The deep issue is traceable and redressable injury. CommonSpirit/St. Vincent "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). In all six of its complaints, CommonSpirit says that, doing business as St. Vincent, it provided services to the Blue Cross patients, and the Blue Cross entities didn't make full payment for those services. The St. Vincent subsidiaries, and CommonSpirit, the upstream parent, are out of pocket. This suffices

for standing at the case's threshold. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). For simplicity, when the Court says CommonSpirit hereafter in this Order, it means CommonSpirit and its St. Vincent subsidiaries.

**Personal Jurisdiction?** Arkansas's long-arm statute reaches as far as the Due Process Clause allows. Ark. Code. Ann. § 16-4-101(B). The familiar question arises: does Blue Cross Louisiana have sufficient minimum contacts with Arkansas such that requiring it to defend this case would be fair? *Walden v. Fiore*, 571 U.S. 277, 283 (2014). No party has submitted evidentiary material on the jurisdictional facts. Therefore, to survive Blue Cross Louisiana's motion to dismiss, CommonSpirit must make a *prima facie* showing of minimum contacts, with the Court viewing the facts in its favor. *Fastpath, Inc. v. Arbela Technologies Corporation*, 760 F.3d 816, 820 (8th Cir. 2014).

Blue Cross Louisiana, and the other Blue Cross entities, repeatedly authorized treatment in Arkansas, made payments to St. Vincent in Arkansas, and participated in the Blue Card program to facilitate coverage in other states. *Doc. 2 at ¶¶ 14, 17, 38, 40, & 57–59 in CommonSpirit I–IV; Doc. 26 at ¶¶ 15, 18, 28–30, 35, 37, 39, & 49–50 in CommonSpirit I; Doc. 2 at 14, 17, 27–29, 34, 36, 38, & 48–49 in CommonSpirit VI.* The reasonable inference is that they participated in this multi-state Blue Card program to help their insureds and make their insurance policies more marketable and profitable. *Ferrell v. West*

*Bend Mutual Insurance Co.*, 393 F.3d 786, 791 (8th Cir. 2005). It's foreseeable that they might be sued in Arkansas in connection with a dispute relating to the program. *Ibid.* CommonSpirit's claims "arise out of or relate to" the Blue Cross entities' Arkansas contacts. *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021). Plus, asserting personal jurisdiction over them here comports with traditional notions of fair play and substantial justice. *Ford*, 592 U.S. at 358. Arkansas has an interest in its hospitals getting paid for providing care. And Arkansas is the most efficient forum in which to litigate this case; CommonSpirit and six different insurance companies from six different states have disputes that converge here. All material things considered, CommonSpirit has carried its *prima facie* burden. This Court has specific personal jurisdiction over Blue Cross Louisiana and the other Blue Cross defendants.

**Preemption?** Blue Cross Alabama says that the Employee Retirement Income Security Act preempts CommonSpirit's state law claims. Maybe. But Blue Cross Alabama doesn't argue that CommonSpirit fails to state an ERISA claim. And the other Blue Cross entities don't address preemption. This issue can be sorted, if need be, in due course.

\*

CommonSpirit claims it had a contract implied-in-fact with the Blue Cross entities, which they broke. CommonSpirit (through St.

Vincent) had a contract with Blue Cross Arkansas. *E.g., Doc. 2 at ¶ 28* in *CommonSpirit I.* CommonSpirit pleads that, under this contract, it was obligated to treat not only Blue Cross Arkansas insureds, but also Blue Card Program insureds from other member companies of the national Blue Cross Blue Shield association. *Ibid.* These entities were not signatories to the contract. But, CommonSpirit was obligated to accept payment from the out-of-state Blue Cross entities, with the payment conforming to the rates in the St. Vincent/Blue Cross Arkansas contract. All an out-of-state patient had to do was present their Blue Card to St. Vincent. *E.g., Doc. 2 at ¶ 29–31* in *CommonSpirit I.* All this, CommonSpirit says, created a contract implied-in-fact between Common Spirit and the out-of-state Blue Cross entities.

The insurers respond that there was no implied contract because there was an express contract that covered the parties' actions. The Blue Cross entities say that any actions beyond the St. Vincent/Blue Cross Arkansas's contract's express terms have no legal effect because two essential contract elements are absent: consideration and mutual assent. *Pine Hills Health & Rehabilitation, LLC v. Matthews*, 2014 Ark. 109, at 6, 431 S.W.3d 910, 915. They argue that CommonSpirit provided the required care. And the Blue Cross entities paid what they were supposed to pay. Therefore, there was no additional consideration. *In re Terminal Moving & Storage Co., Inc.*, 631 F.2d 547, 550 (8th Cir. 1980) (Arkansas law). The Blue Cross entities also say that there was no

meeting of the minds: the parties didn't agree to anything beyond the St. Vincent/Blue Cross Arkansas contract's express terms, so there was no objective mutual assent. *Pine Hills*, 2014 Ark. at 6–7, 431 S.W.3d at 915.

But the Court doesn't have the contract between St. Vincent and Blue Cross Arkansas. It does not have the related payment schedule or list of services. It does not have the governing documents or contracts among the Blue Cross entities about the Blue Card program. The Court needs all those documents to understand CommonSpirit's claims. The Court, in sum, needs more information about the source of the alleged delta (the difference between what the Blue Cross entities paid and what CommonSpirit claims it was owed) and about the Blue Cross entities' layered relationship. The parties' express contract is part of the story, but it may not be the whole story.

Taking CommonSpirit's allegations as true, however, the parties made binding mutual promises. *Johnson v. Johnson*, 188 Ark. 992, 994, 68 S.W.2d 465, 466 (1934). But the Blue Cross entities failed to hold up their end of the bargain when they underpaid the hospital after their patients got the promised care. *See, e.g., Doc. 2 at ¶ 35 in CommonSpirit I.* CommonSpirit has plausibly pleaded consideration.

The same is true for mutual assent. CommonSpirit alleges that it conferred with the Blue Cross entities. It says that these entities authorized services, provided authorization numbers, and approved

–9–

the patients' admissions. *See, e.g., Doc. 2 at ¶ 38 in CommonSpirit I.* These steps may not suffice in the end, but CommonSpirit has plausibly alleged that mind met. Its implied-in-fact contract claim proceeds.

In the alternative, CommonSpirit claims unjust enrichment. Here again, the Blue Cross entities say that, because written express contracts exist, a quasi-contract claim can't proceed. That's the general rule. *E.g., KBX, Inc. v. Zero Grade Farms*, 2022 Ark. 42, at 20, 639 S.W.3d 352, 365. But the general rule has many exceptions. *E.g., QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, at 10, 373 S.W.3d 318, 324–25; *United States v. Applied Pharmacy Consultants, Inc.*, 182 F.3d 603, 606–07 (8th Cir. 1999). Again, the Court doesn't know if the terms of the existing contracts covered the parties' actions. *QHG*, 2009 Ark. App. at 9–10, 373 S.W.3d at 324. There may be silence or ambiguity. In any event, CommonSpirit can pursue alternative claims. *Applied Pharmacy*, 182 F.3d at 606–07.

The Blue Cross entities also argue that there's no unjust enrichment because they didn't get anything from CommonSpirit. They say that the benefits of treatment flowed to the patients, not the insurance companies. They point to a case in which this Court rejected a similar claim for this reason. *Doc. 54 at 20–22* in *Air Evac EMS Inc. v. USAble Mutual Insurance Co.*, No. 4:16-cv-266-BSM (E.D. Ark. 29 May 2018) (collecting cases). CommonSpirit responds with another case that reached the opposite result. *Doc. 24 at 10–13* in *Southeastern Emergency*

*Physicians LLC v. Arkansas Health & Wellness Health Plan, Inc.*, No. 4:17-cv-492-KGB (E.D. Ark. 31 January 2018). The difference between these two cases is which state's law applied. They echo a deep split in courts across the nation about unjust enrichment claims in the health insurance context. *Compare Doc. 54 at 21* in *Air Evac, with Doc. 24 at 11–12* in *Southeastern Emergency.* I'm inclined to agree with *Southeastern Emergency*'s analysis of the applicable Arkansas law. And there may be lurking third-party beneficiary issues. *See, e.g., Perry v. Baptist Health*, 358 Ark. 238, 244–48, 189 S.W.3d 54, 58–60 (2004); Restatement (Third) of Restitution and Unjust Enrichment § 25. The Court needs evidence, and more argument, to decide about unjust enrichment. Construing all pleaded facts in the light most favorable to CommonSpirit, and drawing all reasonable inferences in its favor, this alternative claim also proceeds.

*

CommonSpirit/St. Vincent has plausible claims that the out-of-state Blue Cross entities underpaid. Motions to dismiss, *Doc. 4, 12, 20, 33, 37 & 46* denied.

The Court requests the parties' suggestions about how to handle these consolidated cases most efficiently for everyone. Do we need a master complaint? What about future joint motions and briefs on common issues, with supplemental briefs from defendants on individual issues? Please explore these (and other) possibilities in the

Rule 26(f) report. That report is due by 30 April 2026. The Court will hold an in-person status conference at 1:30 p.m. on 11 May 2026 in Courtroom 1A of the Richard Sheppard Arnold Courthouse in Little Rock. An Amended Initial Scheduling Order will issue.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

_20 March 2026_